UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-cv-20452-BLOOM/Louis

HART DAIRY CREAMERY
CORPORATION and TIMOTHY
CONNELL,

      Plaintiffs,

v.

KEA INVESTMENTS LIMITED,

      Defendant.

_____/

## ORDER

    **THIS CAUSE** is before the Court upon Plaintiffs Hart Dairy Creamery Corporation ("Hart Dairy") and Timothy Connell's ("Connell") (collectively, "Plaintiffs") Renewed Motion for Entry of Final Default Judgment Against Defendant Kea Investments Limited ("Defendant"), ECF No. [25] ("Motion"), and the corresponding Memorandum of Law in Support, ECF No. [25-1]. The Court has carefully reviewed the Motion, the arguments presented at the hearing, the record in this case, and the applicable law, and is otherwise fully advised. For the reasons discussed below, the Motion is denied.

## I. BACKGROUND

    On January 31, 2020, Plaintiffs initiated the instant action against Defendant seeking declaratory judgment and a permanent injunction in the nature of an anti-suit injunction, ECF No. [1] ("Complaint"). Plaintiffs also filed a Motion for Preliminary Injunction on February 3, 2020. ECF No. [3].[1] A summons was issued as to Defendant on March 5, 2020. ECF No. [12]. Service

_____

[1] The Court denied the Motion for Preliminary Injunction without prejudice on February 19, 2020, because Defendant had not yet been served and was therefore unable to properly respond, and noted that Plaintiffs

of the summons and Complaint was executed on Defendant on March 13, 2020, setting a response deadline of April 3, 2020. ECF No. [15]. After Defendant failed to timely respond to the Complaint, Plaintiffs moved for an entry of Clerk's Default against Defendant, ECF No. [19], which the Clerk of Court entered on April 24, 2020, ECF No. [20]. To date, Defendant has neither moved to set aside the Clerk's Default nor filed any other paper in response to this Court's orders. Plaintiffs subsequently moved for default final judgment, ECF No. [22], which the Court denied without prejudice, requesting further briefing on certain issues. *See* ECF No. [24]. Plaintiffs now file the renewed Motion before the Court, with additional briefing on the issues the Court raised. Moreover, on August 14, 2020, this Court held a hearing on Plaintiffs' Motion, for which Defendant failed to appear. ECF No. [36].

The Complaint details the following facts: In July 2018, after a trial in the United Kingdom on a case alleging fraud, breach of fiduciary duty, unlawful inducements, and fraudulent misrepresentation (the "UK Action"), Defendant and its sole owner, Owen Glenn, obtained a judgment against a New Zealand businessman, Eric Watson, and related defendants in the amount of approximately $87 million. ECF No. [1] ¶¶ 14-17. In addition to that monetary relief, Defendant was also granted initial relief, in judgment, which entitled Defendant to trace, *in rem*, funds originating from the transactions addressed in the UK Action and to recover those funds. *Id.* ¶ 17. In post-judgment proceedings, Defendant has pursued other assets and other parties, asserted by Defendant to be subject to the relief granted in the UK Action judgment and to the jurisdiction of the UK High Court. *Id.* ¶¶ 18-19.

The Complaint further alleges that Eric Watson is not, and has never been, an owner of or investor in Hart Dairy, and Hart Dairy has not received any funds or other assets traceable to the

---

could refile their motion once Defendant had been properly served. ECF No. [9].

transactions addressed in the UK Action, it had no part in any of the transactions addressed in that action, and it has had no relation to the UK Action or the parties involved. *Id.* ¶ 20.[2] Nonetheless, beginning in late 2018, counsel for Defendant transmitted a series of correspondence to Connell aimed at enforcement action upon the judgment in the UK Action. *Id.* ¶¶ 23-25. Further, on or about January 21, 2020, Defendant sent correspondence to counsel for Connell stating its intent to imminently commence enforcement proceedings in the UK. *Id.* ¶ 26. As a result of these correspondences, Plaintiffs initiated this action seeking declaratory judgment and a permanent injunction in the form of an anti-suit injunction to preclude Defendant from taking any sort of enforcement action against Plaintiffs or their assets in the UK High Court.

## II. LEGAL STANDARD

If a defendant fails to plead or otherwise defend a complaint filed against it, the Clerk of Court may enter a default against that party. *See* Fed. R. Civ. P. 55(a). Once a default is entered, a plaintiff may seek entry of a default judgment against the defaulting defendant. *See* Fed. R. Civ. P. 55(b). "Under Federal Rule of Civil Procedure 55, a court may enter default judgment against a defendant when (1) both subject matter and personal jurisdiction exist, (2) the allegations in the complaint state a claim against the defendant, and (3) the plaintiff shows the damages to which it is entitled." *Hart Agric. Corp. v. Kea Investments Ltd.*, No. CV 120-018, 2020 WL 3001666, at *2 (S.D. Ga. June 4, 2020) (citing *Pitts ex rel. Pitts v. Seneca Sports, Inc.*, 321 F. Supp. 2d 1353, 1356-58 (S.D. Ga. 2004)). Nonetheless, "default judgments are generally disfavored." *Surtain v.*

---

[2] The Complaint explains that Connell did individually take out a loan of approximately $2 million in funds that are traceable to the transactions addressed in the UK Action, from an entity controlled by Eric Watson, and he invested those funds in equity shares of Stater Global Markets Limited ("Stater"), an English company limited by shares, which were acquired from third parties. ECF No. [1] ¶ 21. Connell accepts that the UK High Court has jurisdiction *in rem* over the shares in Stater acquired with the loan funds that might be traceable to the transactions addressed in the UK Action. *Id.* However, Connell maintains that he is not subject to *in personam* jurisdiction of the UK High Court. *Id.*

*Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015).

"A default judgment, however, is a matter of discretion for the court, not a matter of right to the moving party." *Stream, Inc. v. Mayasam, Inc.*, No. 16-cv-24825, 2017 WL 7798662, at *1 (S.D. Fla. July 7, 2017) (citing *Pitts ex rel. Pitts*, 321 F. Supp. 2d at 1356). Indeed, this Circuit maintains a "strong policy of determining cases on their merits and [] therefore view[s] defaults with disfavor." *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003). As such, a defendant's "failure to appear and the Clerk's subsequent entry of default against him do[es] not automatically entitle Plaintiff to a default judgment." *Capitol Records v. Carmichael*, 508 F. Supp. 2d 1079, 1083 (S.D. Ala. 2007). Stated differently, "a default judgment cannot stand on a complaint that fails to state a claim." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997).

"To state a plausible claim for relief, the plaintiff must go beyond merely pleading the 'sheer possibility' of unlawful activity by a defendant and offer 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *CHCC Co. v. Pilgrim Pipeline Holdings, LLC*, No. 6:16-cv-1954-Orl-22DCI, 2017 WL 7311867, at *3 (M.D. Fla. Aug. 11, 2017) (quoting *Nishimatsu Const. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)),[3] *report and recommendation adopted*, No. 6:16-cv-1954-Orl-22DCI, 2017 WL 4216464 (M.D. Fla. Sept. 22, 2017). By defaulting, a defendant is taken to admit the plaintiff's well-pleaded allegations of fact. *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) (quoting *Nishimatsu Const. Co.*, 515 F.2d at 1206). Although facts are admitted as true, conclusions of law are not; a sufficient basis to state a claim must still

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Court of Appeals for the Eleventh Circuit adopted as binding precedent all decisions of the Court of Appeals for the Fifth Circuit issued prior to October 1, 1981.

exist in the pleadings before a court may enter a default judgment. *Nishimatsu Const. Co.*, 515 F.2d at 1206. Where a plaintiff fails to meet this pleading standard, they will not be entitled to default judgment. *CHCC Co.*, 2017 WL 7311867, at *3. Nonetheless, default judgment is entirely appropriate and within the district court's sound discretion to render where the defendant has failed to defend or otherwise engage in the proceedings. *See, e.g.*, *Tara Prods., Inc. v. Hollywood Gadgets, Inc.*, 449 F. App'x 908, 910 (11th Cir. 2011); *Dawkins v. Glover*, 308 F. App'x 394, 395 (11th Cir. 2009).

### III. DISCUSSION

Upon Defendant's failure to respond to the Complaint and the Clerk's subsequent entry of default, Plaintiffs now move for entry of default final judgment. Specifically, Plaintiffs argue that this Court has jurisdiction over Defendant *in rem* because the property Defendant attempts to take enforcement actions against is located in this district. Likewise, Plaintiffs contend that this Court has *in personam* jurisdiction over Defendant because it has already taken numerous enforcement actions directed towards residents of this state. Plaintiffs further argue that all requirements of the requested anti-suit injunction and the declaratory relief are satisfied in this case, making default judgment appropriate. Finally, Plaintiffs request leave to amend the Complaint, should the Court deny the Motion. The Court will address each argument in turn.

### A. Jurisdiction

Plaintiffs argue that the Court has both *in rem* jurisdiction over this dispute because Plaintiffs' property in this dispute is located in this district and *in personam* jurisdiction over Defendant because Defendant's putative enforcement actions were directed towards Florida.

As noted above, "when entry of a default judgment is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction

both over the subject matter and the parties." *Williams v. Life Savings & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986); *Prince Hotel, SA v. Blake Marine Grp.*, No. CIV.A. 10-0424-WS-M, 2010 WL 4636631, at *1 (S.D. Ala. Nov. 8, 2010). The Complaint sufficiently alleges the existence of this Court's *subject-matter* jurisdiction. *See* ECF No. [1] ¶¶ 5-9 (describing the complete diversity between the parties and indicating that the amount in controversy exceeds $75,000.00). Thus, the jurisdictional question that remains is whether the Court has jurisdiction over Defendant.

The United States Supreme Court has explained the distinction between *in personam* jurisdiction and *in rem* jurisdiction:

> If a court's jurisdiction is based on its authority over the defendant's person, the action and judgment are denominated "*in personam*" and can impose a personal obligation on the defendant in favor of the plaintiff. If jurisdiction is based on the court's power over property within its territory, the action is called "*in rem*" or "*quasi in rem*." The effect of a judgment in such a case is limited to the property that supports jurisdiction and does not impose a personal liability on the property owner, since he is not before the court.

*Shaffer v. Heitner*, 433 U.S. 186, 199 (1977) (footnote omitted).

At the hearing and in the Motion, Plaintiffs argue that this Court can properly exercise personal jurisdiction over Defendant because Defendant's enforcement efforts directed at Plaintiffs and their assets, and Defendant's express commitment to litigating and enforcing the UK Action judgment by filing lawsuits in the United States, create sufficient contacts with this State for the purposes of *in personam* jurisdiction.

> "A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009).

*Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257-58 (11th Cir. 2010).

Florida's long-arm statute sets forth various acts that can subject a nonresident defendant to personal jurisdiction in this State. *See* Fla. Stat. § 48.193. Plaintiffs, in their Motion, argue that

three such acts apply in this case, and these provisions state in relevant part:

> (1)(a) A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:
> 1. Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
> 2. Committing a tortious act within this state.
> . . . .
> 6. Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:
> a. The defendant was engaged in solicitation or service activities within this state; or
> b. Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.

Fla. Stat. § 48.193(1)(a)1-2, 6.

Plaintiffs primarily assert that the enforcement efforts directed towards Plaintiffs and their assets in Florida establish that Defendant was "[o]perating, conducting, engaging in, or carrying on" the business of judgment enforcement, thus satisfying the criteria of Florida's long-arm statute. Critically, however, Plaintiffs' Complaint is entirely devoid of any allegations regarding Defendant's alleged business operations.[4] Absent any factual allegations to support exercising personal jurisdiction over Defendant, the Court finds that Plaintiffs have failed to establish the existence of *in personam* jurisdiction on that basis.

Plaintiffs also suggest that the assets at the heart of this litigation are located within this

---

[4] In addressing a motion for default judgment, courts are limited to the facts alleged in the operative complaint and cannot consider any new facts presented outside of the pleading because the defaulting defendant is not deemed to have admitted such facts by virtue of its default. *Bautista v. Mangia Leggero, Inc.*, No. 15-20830-CIV, 2015 WL 6735541, at *2 n.3 (S.D. Fla. Nov. 4, 2015) (quoting *Sabili v. Chase Hotel Mgmt., LLC*, No. 6:10-cv-807-Orl, 2011 WL 940230, at *3 (M.D. Fla. Feb. 28, 2011), *report and recommendation adopted*, No. 6:10-cv-807-Orl, 2011 WL 940207 (M.D. Fla. Mar. 17, 2011)); *CHCC Co. LLC*, 2017 WL 7311867, at *5 n.10 (noting that a plaintiff cannot attempt to cure a deficiency in its complaint by including additional allegations in its motion for default judgment).

district, thus establishing *in rem* jurisdiction. Yet, the foundational principle upon which *in rem* jurisdiction is based is that it gives a court jurisdiction in order to allow "a resident plaintiff to satisfy a claim against a nonresident defendant by bringing into court any property of the defendant located in the plaintiff's State." *Shaffer*, 433 U.S. at 200. The fact that a defendant has the interest in property located within the State is what allows a court to properly exercise *in rem* jurisdiction. Thus, although Plaintiffs strongly contend that this Court has *in rem* jurisdiction over *Defendant* due to the existence of *Plaintiffs'* property in this district, this argument is clearly contrary to law. *See United States v. One Lear Jet Aircraft, Serial No. 35A-280, Registration No. YN-BVO*, 836 F.2d 1571, 1573 (11th Cir. 1998) ("The general rule of *in rem* jurisdiction is that the court's power derives entirely from its control over the defendant *res*."); *Odyssey Marine Expl., Inc. v. Unidentified, Wrecked & Abandoned Sailing Vessel*, 727 F. Supp. 2d 1341, 1345 (M.D. Fla. 2010).[5] Therefore, this Court is unpersuaded by Plaintiffs' novel position that its own assets

---

[5] As the Court of Appeals for the Fourth Circuit aptly explained:

> Injunctive relief, by its very nature, can only be granted in an *in personam* action commenced by one party against another in accordance with established process. Consequently, a party cannot obtain injunctive relief against another without first obtaining *in personam* jurisdiction over that person or someone in legal privity with that person. *See* Fed. R. Civ. P. 65(d).
>
> By contrast, injunctive relief ordered in an *in rem* action would be meaningless because things or property cannot be enjoined to do anything. Likewise, personal jurisdiction need not be exercised in a pure *in rem* proceeding because, in the simplest of terms, a piece of property and not a person serves as the defendant. *See* [*The Moses Taylor*, 71 U.S. 411, 431 (1866)] ("The distinguishing and characteristic feature of . . . [an *in rem* ] suit is that the vessel or thing proceeded against is itself seized and impleaded as the defendant, and is judged and sentenced accordingly"). *In rem* actions only require that a party seeking an interest in a *res* bring the *res* into the custody of the court and provide reasonable, public notice of its intention to enable others to appear in the action to claim an interest in the *res. See Roller v. Holly*, 176 U.S. 398, 403-06 (1900)[.]

*R.M.S. Titanic, Inc. v. Haver*, 171 F.3d 943, 957 (4th Cir. 1999); *see also Canon Latin Am., Inc. v. Lantech (CR), S.A.*, 508 F.3d 597, 601 (11th Cir. 2007) ("It is well-established among the courts of appeals that federal courts have some power to enjoin foreign suits by persons subject to federal court jurisdiction." (citing *Quaak v. Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren*, 361 F.3d 11, 16 (1st Cir. 2004); *China Trade & Dev. Corp. v. M.V. Choong Yong*, 837 F.2d 33, 35 (2d Cir. 1987))); *Hart Agric. Corp.*, 2020

located in Florida establish *in rem* jurisdiction over Defendant. *See Hart Agric. Corp.*, 2020 WL 3001666, at *4 (finding no *in rem* jurisdiction over foreign defendant where there was no basis to exercise jurisdiction over the interests of the defendant in property).

Based on the discussion above, the Court finds that Plaintiffs' Motion should be denied because it fails to establish that Defendant is subject to this Court's *in personam* jurisdiction or its *in rem* jurisdiction. *See Burr & Forman v. Blair*, 470 F.3d 1019, 1035 (11th Cir. 2006) ("Without jurisdiction the court cannot proceed at all in any cause."); *Juris v. Inamed Corp.*, 685 F.3d 1294, 1335 (11th Cir. 2012) ("Certain fundamental defects—[such as] lack of . . . personal jurisdiction—in a prior litigation will render the judgment void and without legal effect."); *Fameflynet, Inc. v. Oxamedia Corp.*, No. 17-80879-CIV, 2018 WL 8244525, at *1 (S.D. Fla. May 1, 2018). Although Plaintiffs' failure to demonstrate the existence of personal jurisdiction is a sufficient basis, on its own, to deny the instant Motion because "[a] court without personal jurisdiction is powerless to take further action," the Court will nonetheless address the remaining arguments in Plaintiffs' Motion. *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 n.6 (11th Cir. 1999); *Crawford v. Harvard Publ'g Co.*, No. 1:16-cv-2463-WSD, 2017 WL 36400, at *4 (N.D. Ga. Jan. 4, 2017).

## B. Declaratory Relief & Anti-Suit Injunction

Even if Plaintiffs had sufficiently established this Court's jurisdiction over Defendant in this case, the Court remains unpersuaded that granting default judgment on either of the two substantive claims asserted would be appropriate.

### 1. Declaratory Relief

Plaintiffs first seek declaratory relief pursuant to Federal Rule of Civil Procedure 57, which governs the procedure for obtaining a declaratory judgment under the Declaratory Judgment Act,

---

WL 3001666, at *3 ("[A]n anti-suit injunction—relief Plaintiffs seek here—cannot issue against a party not subject to federal court jurisdiction.").

28 U.S.C. § 2201. Specifically, Plaintiffs request a declaration to the effect that (1) "Plaintiffs (and

Hart Dairy Creamery's wholly-owned subsidiaries) are subject to the jurisdiction *in personam* in

this Court and not in the High Court of England and Wales, and that Plaintiff's [sic] assets in this

District are subject to jurisdiction *in rem* in this Court and not the High Court of England and

Wales," and (2) "Plaintiffs are not liable to Defendant in any way whatsoever upon the [UK Action

judgment.]" ECF No. [1] ¶¶ 51.a-b.

> The [Declaratory Judgment] Act permits federal courts in "a case of actual controversy" to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Courts have no duty to declare those rights. *Ameritas Variable Life Ins. v. Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005). And a "case of actual controversy" referenced in the Act refers to justiciable cases under Article III. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).
> 
> The ripeness doctrine "protects federal courts from engaging in speculation or wasting their resources through the review of potential or abstract disputes." *Digital Properties, Inc. v. City of Plantation*, 121 F.3d 586, 589 (11th Cir. 1997). Further, it "seeks to avoid entangling courts in the hazards of premature adjudication." *Id.* (citation omitted). Ultimately, ripeness "goes to whether the district court ha[s] subject matter jurisdiction to hear the case." *Id.* at 591 (citation omitted). To determine ripeness, courts look at two factors: (1) "the fitness of the issues for judicial decision" and (2) "the hardship to the parties of withholding court consideration." *Carver Middle Sch. Gay-Straight All. v. Sch. Bd. of Lake Cty., Fla.*, 842 F.3d 1324, 1329 (11th Cir. 2016) (citation omitted).

*Hartford Fire Ins. Co. v. Beazer Homes, LLC*, No. 2:19-cv-454-FtM-38MRM, 2019 WL 5596237,

at *1 (M.D. Fla. Oct. 30, 2019).

"Consistent with the requirements of Article III of the United States Constitution, the facts

alleged must present a 'substantial continuing controversy between two adverse parties.'" *John*

*Hancock Life Ins. Co. (USA) v. Orr*, No. 6:15-cv-317-Orl-18TBS, 2015 WL 5897684, at *2 (M.D.

Fla. Oct. 7, 2015) (internal quotations omitted). "The plaintiff must allege facts from which the

continuation of the dispute may be reasonably inferred. Additionally, the continuing controversy

may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a

definite, rather than speculative threat of future injury.'" *Malowney v. Fed. Collection Deposit*

*Grp.*, 193 F.3d 1342, 1347 (11th Cir. 1999) (citing *Emory v. Peeler*, 756 F.2d 1547, 1552 (11th Cir. 1985)).

Upon consideration of the circumstances in this case, the Court is not convinced that "a case of actual controversy" exists. As discussed at the hearing, despite the communications that Plaintiffs characterize as putative enforcement actions, Defendant has not taken any additional steps to act on its threats of enforcement before the UK High Court. Notably, the "imminent threat of enforcement" that Plaintiffs raise to support their claims is a letter from January 20, 2020, indicating that Defendant planned to notify the UK High Court of the correspondences between the parties. However, Plaintiffs admit that since the January 20, 2020 letter, Defendant has not taken any additional action to enforce its alleged claims against Plaintiffs. These circumstances do not suggest that there is definite, immediate, and ongoing controversy that would warrant declaratory judgment. Rather, the threats of injury that Plaintiffs allege—namely, being haled to the UK High Court to defend against wrongful claims and any resulting financial harm incurred from defending against that litigation—are speculative and contingent at this stage. *See Mid-Continent Cas. Co. v. Delacruz Drywall Plastering & Stucco, Inc.*, 341 F. Supp. 3d 1289, 1292 (M.D. Fla. 2018), *aff'd*, 766 F. App'x 768 (11th Cir. 2019).[6] Thus, Plaintiffs' Motion as to the claim for declaratory judgment is denied.

### 2.   Anti-Suit Injunction

Plaintiffs also seek a permanent injunction, in the form of an anti-suit injunction, enjoining

---

[6] The Court also notes that even if the claims at issue were ripe, it would be reluctant to award Plaintiffs the declaratory relief because such relief is either contradicted or not sufficiently supported by the factual allegations in the Complaint. For example, the declaratory relief Plaintiffs request makes no exception for the Stater shares that Connell owns. Likewise, this overbroad relief attempts to include a declaration regarding Hart Dairy's wholly owned subsidiaries, despite the complete absence of any allegations to support the contention that such subsidiaries are exclusively subject to this Court's *in personam* jurisdiction. Accordingly, Plaintiffs claim for declaratory judgment is also due to be denied on this basis.

Defendant from proceeding against Plaintiffs' assets *in rem* (apart from the Stater shares) or against Plaintiffs *in personam* in the High Court of England and Wales. Plaintiffs argue that this injunction is necessary to protect Plaintiffs and their assets from being wrongly haled to the UK High Court. Additionally, Plaintiffs contend that the action Defendant seeks to take in the UK High Court would threaten this Court's *in rem* jurisdiction and would constitute improper forum shopping and a race to judgment. Likewise, Plaintiffs state that having to engage in expensive litigation in the UK High Court would be unreasonably vexatious and prejudicial. Thus, Plaintiffs request an anti-suit injunction to foreclose Defendant from seeking any relief against them in the UK Action.

Federal courts are vested with the discretionary power to enjoin foreign suits by persons subject to their federal jurisdiction. *Canon Latin Am., Inc.*, 508 F.3d at 601; *see also Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 627 (5th Cir. 1996); *Kirby v. Norfolk S. Ry. Co.*, 71 F. Supp. 2d 1363, 1366 (N.D. Ga. 1999). District courts may issue these anti-suit injunctions only if two "threshold requirements" are met: (1) "the parties are the same in both [the foreign and domestic lawsuits],"[7] and (2) "resolution of the case before the enjoining court is dispositive of the action to be enjoined."[8] *Id.* (alteration in original) (quoting *Paramedics Electromedicina*, 369 F.3d at 652). "Only if this 'gatekeeping inquiry' is satisfied should the Court 'consider additional factors to determine whether an injunction is appropriate.'" *APR Energy, LLC v. First Inv. Grp. Corp.*, No. 3:14-cv-575-J-34JBT, 2014 WL 2523589, at *1 (M.D. Fla. June 4, 2014) (quoting *Canon Latin*

---

[7] "By mandating that the parties in both the domestic and foreign actions be effectively the same, the first threshold requirement for an anti-suit injunction insures that a party to a foreign action is not unjustly barred from either defending a claim or obtaining relief." *APR Energy, LLC v. First Inv. Grp.*, 88 F. Supp. 3d 1300, 1319 (M.D. Fla. 2015) ("*APR Energy II*").

[8] As the Eleventh Circuit has explained, in this context, "dispositive" means "to settle or finish the dispute." *Canon Latin Am., Inc.*, 508 F.3d at 601 n.8.

*Am., Inc.*, 508 F.3d at 601) ("*APR Energy I*").[9] Moreover, the moving party "bears the burden of clearly establishing the threshold requirements for an anti-suit injunction." *Id.* at *2 (citing *Barnie's Coffee & Tea Co., Inc. v. Am. Mattress Co.*, No. 6:07-cv-1664-Orl-19UAM, 2008 WL 191019, at *3 (M.D. Fla. Jan. 22, 2008)).

Courts must nevertheless be mindful that, "because an anti-suit injunction effectively restricts the jurisdiction of a foreign court, such an injunction should be 'used sparingly' and granted 'only with care and great restraint.'" *APR Energy II*, 88 F. Supp. 3d at 1314 (quoting *China Trade & Dev. Corp.*, 837 F.2d at 35-36). "Determining the appropriateness of an international antisuit injunction is a highly nuanced exercise. An inquiring court must find a way to accommodate conflicting, mutually inconsistent national policies without unduly interfering with the judicial processes of a foreign sovereign." *Quaak*, 361 F.3d at 16 (citing *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 916 (D.C. Cir. 1984)). "Notwithstanding the court's authority to enjoin foreign litigation, given the presumption in favor of concurrent jurisdiction, it is generally accepted that parallel proceedings should be allowed to proceed." *Dr. Byte USA, LLC v. Storex Indus. Corp.*, No. 07-80379-CIV, 2008 WL 11333115, at *2 (S.D. Fla. Feb. 21, 2008) (citing *Quaak*, 361 F.3d at 16-17), *report and recommendation adopted*, No. 07-80379-CIV, 2008 WL 11333675 (S.D. Fla. Mar. 11, 2008); *see also China Trade & Dev. Corp.*, 837 F.2d at 36 (noting that parallel proceedings are "ordinarily tolerable").

> Only if the initial threshold [requirements are] met should the district court proceed to consider additional factors to determine whether an injunction should issue. [*Paramedics Electromedicina*, 369 F.3d at 601]. Such factors may include protection of the enjoining court's jurisdiction, safeguarding important national

---

[9] *See also S.E.C. v. Pension Fund of Am., L.C.*, 396 F. App'x 577, 580-82 (11th Cir. 2010) (vacating the district court's contempt order "[t]o the extent it rested upon [the] violation of the anti-suit injunction" because "neither of the threshold requirements for the issuance of an anti-suit injunction [had] been met"); *Paramedics*, 369 F.3d at 654 ("Beyond the threshold criteria . . . , other considerations include whether the foreign proceeding threatens a strong public policy or the jurisdiction of the domestic forum."); *Quaak*, 361 F.3d at 18 ("considerations of international comity must be given substantial weight").

policies, and considerations of international comity—the latter of which is to be given substantial weight. *See Quaak v. Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren*, 361 F.3d 11, 18 (1st Cir. 2004). This inquiry is necessarily fact-intensive, and requires a district court to consider the totality of the circumstances. *See id.* at 18-19.

*S.E.C. v. Pension Fund of Am., L.C.*, 613 F. Supp. 2d 1341, 1345 (S.D. Fla. 2009).[10] Moreover, "[t]hat the injunction operates only against the parties, and not directly on the foreign court, does not obviate the need for due regard to principles of international comity, as such an order effectively invades the jurisdiction of a sovereign government." *Kirby*, 71 F. Supp. 2d at 1366-67 (citing *China Trade & Dev. Corp.*, 837 F.2d at 35).

At the outset, the Court notes that Plaintiffs' anti-suit injunction claim likely suffers from the same prematurity as their declaratory judgment claim. To date, Plaintiffs have not been joined by Defendant to any pending action in the UK. Further, given Defendant's failure to act on its threats of enforcement over the past ten months, the Court fails to see how any alleged threat of injury to Plaintiffs is imminent. As it currently stands, Plaintiffs can only speculate whether they will ultimately be forced to defend against Defendant's enforcement action, what claims will be asserted against Plaintiffs, whether the UK Court improperly exerts *in personam* jurisdiction over Plaintiffs, or the realistic prejudice they will suffer as a result of participating in those proceedings. *See APR Energy I*, 2014 WL 2523589, at *2 ("APR Energy has offered no information regarding

---

[10] Although there is national variation regarding what additional factors should be considered on an anti-suit injunction, the Court of Appeals for the Second Circuit in *China Trade & Development Corp.* has articulated five discretionary factors that many courts consider once the threshold inquiries are established:

> When these threshold requirements are met, five factors are suggested in determining whether the foregoing action should be enjoined: (1) frustration of a policy in the enjoining forum; (2) the foreign action would be vexatious; (3) a threat to the issuing court's in rem or quasi in rem jurisdiction; (4) the proceedings in the other forum prejudice other equitable considerations; or (5) adjudication of the same issues in separate actions would result in delay, inconvenience, expense, inconsistency, or a race to judgment.

*China Trade & Dev. Corp.*, 837 F.2d at 35.

the claims raised before the Libyan court. Thus, on the current record, the Court is unable to determine whether resolution of this case would be dispositive of the Libyan action."); *eLandia Int'l, Inc. v. Koy*, No. 09-20588-CIV, 2009 WL 10667894, at *2 (S.D. Fla. Aug. 24, 2009) (denying anti-suit injunction where foreign proceedings had not been commenced yet, and the court couldn't discern from the threat of enforcement alone what the injury would be); *Duggan v. Olson*, No. 12cv0005 BTM(WMC), 2012 WL 12874926, at *4 (S.D. Cal. Nov. 6, 2012) (same).

Regardless, the Court now turns to the question of whether Plaintiffs adequately plead their anti-suit injunction claim. As explained above, "[a] district court may issue an anti-suit injunction only if: (1) the parties are the same in both the foreign and the domestic actions; and (2) resolution of the case before the enjoining court is dispositive of the action to be enjoined." *Citibank, N.A. v. Mazza*, No. 19-21216-CIV, 2019 WL 4694134, at *5 (S.D. Fla. Aug. 2, 2019) (citing *Canon Latin Am., Inc.*, 508 F.3d at 601). Upon review of the allegations in the Complaint, the Court is satisfied that these two gateway requirements are met.

First, although there may be additional parties involved in the UK Action, the parties here are the same parties as those presumably involved in the foreign action. *See APR Energy II*, 88 F. Supp. 3d at 1316 (explaining that the Eleventh Circuit's decision in *Pension Fund* "contemplates that even when parties to a domestic and foreign action are not 'literally' the same, the parties still may be effectively the same for purposes of an anti-suit injunction"). Thus, there is sufficient similarity between the parties here for the first threshold requirement.

Second, resolution of the issues raised in this action would be dispositive to the threatened enforcement action in the UK Action. Plaintiffs seek, among other things, a declaration that they are not liable to Defendant for the judgment in the UK Action and an anti-suit injunction to prevent Defendant from proceeding against them or their assets before the UK High Court. Disposition of

those claims would be dispositive to the threatened enforcement action in the UK. *See, e.g.*, *E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 991 (9th Cir. 2006) ("In the Ecuadorian court, Andina sued for breach of contract. In the district court, Gallo sought, among other things, a declaration that Gallo did not breach the distributorship agreement. Therefore, all the issues before the court in the Ecuador action are before the court in the California action."). As such, Plaintiffs have satisfied the second threshold element of an anti-suit injunction.

Moreover, although Plaintiffs' Complaint also addresses the public policy factors, such allegations are not necessary to state a claim for anti-suit injunction. *See Citibank, N.A.*, 2019 WL 4694134, at *4 (rejecting the assertion that a complaint needs to allege both the threshold requirements and the public policy factors to properly state a claim for anti-suit injunction). Nevertheless, as public policy factors are discretionary determinations for the Court to make, the Court is not bound to accept the conclusions Plaintiffs set forth. Indeed, the Court must undertake its own analysis to determine whether such an extraordinary injunction is appropriate and concludes that it is not.

Most significantly, this action is attempting to deprive the UK High Court of the ability to enforce its valid judgment, and principles of international comity weigh strongly against this Court's interference. Critically, Plaintiffs' attempt to circumvent the UK Action here is precisely the kind of race to judgment that anti-suit injunctions seek to prevent. Further, there is no evidence to support Plaintiffs' contention that the proceedings before the UK High Court would deprive this Court of its jurisdiction, as the Court presumes that the UK High Court will only act pursuant to its own lawful jurisdiction. Finally, the expense and inconvenience of litigating before the UK High Court is not, on its own, a sufficient basis to grant such an extraordinary remedy, especially in light of the strong international comity interests at stake here. Thus, the Court refuses to exercise

its discretion to grant the anti-suit injunction requested and Plaintiffs' Motion is denied as to the requested injunctive relief.

Regarding Plaintiffs' request for leave to amend, the Court denies this request on the basis of futility.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiffs' Renewed Motion for Entry of Final Default Judgment Against Defendant, **ECF No. [25]**, is **DENIED**.

2. The above-styled action is **DISMISSED WITHOUT LEAVE TO AMEND**.

3. To the extent not otherwise disposed of, all pending motions are **DENIED AS MOOT**, any scheduled hearings are **CANCELED**, and all deadlines are **TERMINATED**.

4. The Clerk of Court is directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Miami, Florida, on October 29, 2020.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

Kea Investments Limited
Registered Agent:
Icaza, Gonzalez-Ruiz & Aleman (BVI) Trust Limited
Tortola Pier Park, Building 1, Second Floor
Wickhams Cay 1, Road Town
Tortola
VG1110
Virgin Island, British